UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

    ROBERT J. SCHNOOR,

        Debtor.

_____/

Case No. 09-00772-jrh
Chapter 13 filed: 1/28/09
Converted Chapter 7: 2/6/09
Hon. Jeffrey R. Hughes

JEFF A. MOYER, Chapter 7 Trustee,

        Plaintiff,

v.

Adv. Pro. No. _____

CHARRON & HANISCH LLC. , DAVID CHARRON
and NEW YORK PRIVATE INSURANCE
AGENCY, LLC.,

        Defendants.

_____/

### TRUSTEE'S COMPLAINT AGAINST DEFENDANT CHARRON & HANISCH, LLC; DEFENDANT DAVID CHARRON AND DEFENDANT NEW YORK PRIVATE INSURANCE AGENCY, LLC TO AVOID FRAUDULENT TRANSFERS PURSUANT TO § 548 and § 544(b), TO AVOID PREFERENTIAL TRANSFERS PURSUANT TO § 547 AND TO RECOVER THE VALUE OF THE AVOIDED TRANSFERS UNDER § 550

NOW COMES Chapter 7 Trustee Jeff A. Moyer ("Trustee"), by and through his attorneys, Purkey & Associates PLC, and for his Complaint to avoid certain fraudulent transfers, preferential transfers and to recover the value of the avoided transfers pursuant to § 548, § 544(b), § 547, and § 550 states as follows:

### JURISDICTION AND VENUE

1.   Debtor Robert J. Schnoor ("Debtor") filed a voluntary Chapter 13 petition on January 28, 2009.

2.   On February 6, 2009, this case was voluntarily converted to one under the provisions of Chapter 7.

3.   Jeff Moyer is the duly-appointed, acting and serving Chapter 7 Trustee in this bankruptcy.

4.   The Court has jurisdiction in this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157(a).

5.   This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H) and/or (O).

6.   This adversary proceeding is filed pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.

## GENERAL BACKGROUND

7.   Jane T. Schnoor is the former spouse of Debtor Robert J. Schnoor and resided at 6973 Wildermere NE; Rockford, Michigan 49341 within the Western District of Michigan. Jane T. Schnoor currently resides at 7745 Greenbrier Drive NE; Rockford, MI 49341.

8.   Joshua Schnoor is the son of Jane T. Schnoor and Debtor R. Judd Schnoor. Joshua Schnoor resided at 6973 Wildermere NE, Rockford, MI within the Western District of Michigan.  It is believed that Joshua Schnoor currently resides at 7745 Greenbrier Drive, Rockford, MI 49341 within the Western District of Michigan.

9.   REWS, LLC is a family limited liability company formed on or about September 28, 1998 and controlled by Robert E. W. Schnoor. Robert E. W. Schnoor is also the resident agent for REWS, LLC.  Debtor is a beneficiary of REWS, LLC.

2

10. Robert E. W. Schnoor is the father of Debtor. Robert E. W. Schnoor resides at 6062 Parview Drive SE; Grand Rapids, MI 49546.

11. Suzanna Velting is the daughter of Debtor R. Judd Schnoor and Jane T. Schnoor and resides at 8390 Cannonsburg Rd NE; Ada, MI 49301-9729 within the Western District of Michigan.

12. Morris Schnoor and Gremmel, Inc. a/k/a Morris, Schnoor & Gremel ("MSG, Inc.") was a successful insurance agency that was owned 100% by Debtor until January 14, 2009 when Debtor stated in his Divorce Decree that his and his Trust's interest in the stock of MSG, Inc. are worthless so Debtor agreed to hold all of the stock of MSG Inc. in trust for the exclusive benefit of Jane T. Schnoor. On the date of filing, Debtor held 100% of MSG Inc. stock for the exclusive benefit of Jane T. Schnoor. Debtor Judd Schnoor is the resident agent for MSG, Inc. and Judd Schnoor resides at 170 Marcel in Rockford, MI within the Western District of Michigan.

13. Defendant Charron & Hanisch PLC is a Professional Domestic Limited Liability Company located at 4949 Plainfield NE; Grand Rapids, MI 49525 within the Western District of Michigan and whose resident agent is Defendant David W. Charron. Defendant Charron & Hanisch PLC is believed to be solely owned by Defendant David Charron and is the law firm that is representing Debtor and his entities in numerous state court law suits. Upon information and belief, Defendant David Charron operated Defendant Charron & Hanisch PLC as his personal alter ego.

14. Defendant David Charron was/is a business partner of Debtor at a minimum to the extent that they jointly owned a company named Sundance Development, Inc.

3

15. Upon information and belief, Defendant David Charron of Defendant Charron & Hanisch assisted Debtor in the creation and dissolution of many companies and served as the resident agent for a significant number of entities created for Debtor and has been Debtor's counsel and personal advisor for the majority of his companies and for most of his personal matters.

16. Defendant David Charron and Debtor have a relationship that is substantially more involved, mutually beneficial and interdependent than the usual attorney/client relationship.

17. Defendant New York Private Insurance Agency LLC ("NYPIA") is a Michigan entity located at 170 Marcell; Rockford, MI. It was created on November 12, 2008. (E1548K). Defendant NYPIA conducts business under the assumed name Great Lakes Risk Management LLC which was created December 17, 2008 and April 24, 2009 and transacts business at 170 Marcell, Rockford, MI. The resident agent for Defendant NYPIA is David Gerling, 700 West Randall Ste 100; Coopersville, MI 49341.

18. Guy Hiestand is a business partner of Debtor R. Judd Schnoor in that they are/were both shareholders of Silverstone Oil Company. Guy Hiestand is an accountant whose place of business is located at 4305 S. Division; Grand Rapids, MI within the Western District of Michigan. Guy Hiestand acted as personal advisor to Debtor and set up some of Debtor's entities and assisted in obtaining counsel for Jane T. Schnoor in her divorce from Debtor. Upon information and belief, Mr. Hiestand may have had pre-petition discussions with Jane T. Schnoor about the divorce.

**FACTUAL ALLEGATIONS**

4

19. Debtor was an owner or member or shareholder of multiple entities in the

two years preceding the filing of bankruptcy including but not limited to:

Andrew Gremel Associates, Inc. (538477)
    *Andrew Gremel & Associates, Inc.
    Morris Schnoor & Gremel
    Morris Schnoor and Gremel
Accurate Construction Company (51603C)
Accurate Premium Financing (31145D)
Accurate Companies Group (D16035)
Belding Commons, Inc. (40062D)
Edna Curtis Development (34328R)
Edna Curtis Investments LLC (B8827Y)
GH Insurance Agency (E0274W)
    *GH Insurance Agency LLC
    Great Lakes Risk Management
    MSG Associates
    MSG Insurance Agency
Insurance Program Managers (371990)
    *Morris Schnoor & Gremel
    Morris Schnoor and Gremmel, Inc.
    Morris Schnoor & Gremel II
    MSG Associates
    Sav Camp, Inc.
JSRF, LLC
Judd LLC (B8827X)
Morris Schnoor and Gremmel Inc. (371990)
    *Morris, Schnoor & Gremel
    Morris, Schnoor and Gremel
    MSG Associates
    Morris Schnoor & Gremel
    Insurance Program Managers
    Morris Schnoor & Gremel II
    Morris Schnoor & Gremel
    Sav Camp, Inc.
Morris Schnoor and Gremel Properties (B03603)
Morris, Schnoor & Gremel II (371990)
Morris Schnoor & Gremel (538477)
    *Andrew Gremel & Associates, Inc.
    Andrew Gremel Associates, INC.
    Morris Schnoor & Gremel

Morris Schnoor and Gremel
Morris Schnoor and Gremel Benefits LLC (D25258)
    *Great Lakes Risk Management LLC
    Morris Schnoor and Gremel Benefits LLC
    MSG Benefits, LLC
MSG Benefits LLC (D25258)
Morris Schnoor and Gremel (538477)
    *Andrew Gremel & Associates Inc
    Andrew Gremel associates, Inc.
    Morris Schnoor & Gremel
    Morris, Schnoor and Gremel
MSG Associates(D25568; E0274W; 371990)
    *Great Lakes Risk Management LLC
    Morris Schnoor & Gremel
    Morris Schnoor & Gremmel
    MSG Associates
    MSG Insurance Agency
    RIG
    Rockford Insurance Agency LLC
MS&G (371989)
    *Insurance Program Managers
    MS&G Inc.
REWS, LLC (B36321)
Red's on the River LLC (B7469J)
Silverstone Oil Company (Canadian company)
Sundance Development, Inc. (24240R)
Sav Camp, Inc. (371990)
Terra Vista Development LLC (D10241)

    *The indented portion under the entities are the assumed names under which each of the entities conducted business.

    20.  MSG, Inc. was an insurance agency that was owned at one time by Glenn Morris and Debtor as equal shareholders.

    21.  Debtor became a 100% shareholder/owner of MSG, Inc. on or about October 26, 2007.

22. Jane T. Schnoor was not an owner, director, shareholder or otherwise involved in the business of MSG, Inc. Jane T. Schnoor did not work at MSG, Inc.

23. Debtor sold or otherwise transferred specific memberships and shares of stock in various entities to his son Joshua Schnoor during the two years preceding the filing of bankruptcy.

24. These transfers of interest in various entities to Joshua Schnoor were completed with some payments allegedly made and promissory notes issued all signed by Joshua Schnoor and payable to Debtor R. Judd Schnoor personally.

25. Accurate Construction Company was/is a corporation owned either 100% by Debtor, or by Tyler Velting, Debtor's son-in-law, and Debtor R. Judd Schnoor as of the date of filing bankruptcy. Debtor R. Judd Schnoor had/has controlling interest of Accurate Construction Company at all times relevant to this litigation.

26. Jane T. Schnoor was not an owner, director, shareholder or member of Accurate Construction Company. Jane T. Schnoor did not work at Accurate Construction Company.

27. Accurate Premium Financing was a corporation originally owned by Debtor, Guy Hiestand and Dave Young and was formed in 2004. Debtor owned 45% of the corporation until sometime in December 2007 when Debtor allegedly transferred his stock interest in Accurate Premium Financing to son Joshua Schnoor for either $40,000 or $18,390.00.

28. Jane T. Schnoor was not an owner, director, shareholder or member of Accurate Premium Financing. Jane T. Schnoor did not work at Accurate Premium Financing.

7

29.  JSRF, LLC was a company set up by Debtor and Richard Frost to develop land in Knoxville, Tennessee.

30.  Debtor transferred his interest in JSRF, LLC to son Joshua Schnoor within the two years preceding the filing of bankruptcy.  On or about December 31, 2007 Debtor allegedly transferred his membership interest to son Joshua Schnoor for $62,906.95, the exact amount of money that Debtor was out-of-pocket on the JSRF, LLC project in Tennessee.

31.  REWS LLC is a limited liability company controlled by Debtor's father. Debtor is a beneficiary and/or member of REWS LLC.

32.  Debtor claims he borrowed $400,000 from REWS LLC between 2003 and 2007.

33.  Within the 2 years preceding the bankruptcy Debtor owned 586,611 shares of Silverstone Oil Company a company located in Canada.

34.  On or about April 1, 2007 Debtor transferred all his shares of stock in Silverstone Oil Company to REWS LLC in partial satisfaction of the debt Debtor allegedly owed to REWS LLC.  Debtor valued this transfer of stock at $200,000.

35.  Prior to December 24, 2007 Debtor owned 3 1/3% (three and one third percent) shares of Red's on the River stock.  On December 24, 2007 and January 10, 2008 Debtor transferred this stock interest to his daughter Defendant Suzanna Velting for no consideration.  Debtor testified at his 341 meeting that this transfer was partially a gift and partially in satisfaction of an alleged $15,000 debt owed to Defendant Suzanna Velting.

8

36.  Debtor transferred all of the above property to relatives and insiders within two years of filing for bankruptcy.

37.  Defendant David Charron is an attorney who has represented Debtor on numerous occasions.  Additionally, Defendant David Charron was a business partner of Debtor, at least in a corporation named Sundance Development, Inc.

38.  Sundance Development Inc was formed August 5, 2004 and was dissolved by written consent of all shareholders on June 25, 2007.  The shareholders in the corporation were Martin Carteng, the Debtor and Defendant David Charron.

39.  Defendant David Charron of Defendant Charron & Hanisch represented Debtor in many issues concerning most of his entities as well as in personal issues. Upon information and belief, Defendant David Charron also served on advisory boards on companies in which Debtor had an interest.

40.  On or about May 22, 2008 Debtor allegedly granted a security interest in all the assets of MSG, Inc. to Defendant Charron & Hanisch, Defendant David Charron's law firm, for the purpose of securing past and future attorney fees for Debtor's personal and commercial legal issues.

41.  On May 22, 2008 at about 1:30 pm, Debtor was deposed by attorney Stan Stek in a case named *Morris v. Schnoor, et. al*; Case No. 07-06441-CR pending in Kent County Circuit Court and was asked whether there had been any transfer or sale of any of the assets of MSG, Inc. to any third party and Debtor responded "No".

42.  By resolution of the board of directors of MSG, Inc. also allegedly dated May 22, 2008, Debtor R. Judd Schnoor as director of MSG Inc. indicated that Defendant Charron & Hanisch was retained to represent Debtor's corporation MSG, Inc. in various

state court lawsuits but that the law firm would only continue to extend credit to the corporation if it was secured against the assets of MSG, Inc. The resolution authorized the company to grant the law firm a security interest in all the assets of MSG, Inc. for the purpose of securing past and future indebtedness of the corporation and its wholly owned subsidiary Andrew Gremel Associates, Inc.

43.   Debtor signed an Account Stated document allegedly dated May 15, 2008 indicating that as of May 15, 2008 MSG Inc was indebted to Defendant Charron & Hanisch PLC in the amount of $286,730.95.

44.   Upon information and belief, Debtor incurred additional attorney fees with Defendant Charron & Hanisch PLC between May 15, 2008 and May 22, 2008.

45.   After Debtor granted Defendant Charron & Hanisch PLC a security interest in all of the assets of MSG, Inc. on May 22, 2008, Defendant Charron & Hanisch PLC filed a UCC financing statement on June 4, 2008 encumbering "All assets currently owned by debtor and /or all assets hereinafter acquired by debtor". The debtor referred to in the UCC financing statement is Morris Schnoor and Gremmel, Inc. ("MSG, Inc.")

46.   Upon information and belief Morris Schnoor and Gremmel, Inc is a misspelling of Morris Schnoor & Gremel, Inc. Both companies will be referred to as MSG, Inc. throughout this complaint. MSG, Inc. conducted business at 8 E. Bridge St. Suite 100, Rockford, MI.

47.   By letter dated June 25, 2007, Defendant David Charron wrote to Debtor R. Judd Schnoor at MSG Inc. advising that he did "not intend to separate the billing for the corporation and the individual representation of Judd Schnoor because of the

"significant overlap" in the claims and defenses in this matter." The allocation of the billing was left to Debtor R. Judd Schnoor to do in a reasonable and appropriate manner.

48.   On or about October 17, 2008 Defendant Charron & Hanisch wrote a letter to "Judd" stating that the law firm would exercise its right under the UCC to sell all or a portion of the collateral at a public or private auction.  The letter invited Debtor to find a buyer.

49.   On or about November 7, 2008 Defendant Charron & Hanisch PLC indicated that the firm intended to sell all the assets of MSG Inc. to Defendant New York Private Insurance Agency, LLC, ("NYPIA") located at 170 Marcell Drive NE; Rockford, MI 49341.

50.   On or about November 21, 2008, Defendant NYPIA purchased the assets of MSG Inc. for $395,000, allegedly paying $100,000 down and giving a promissory note payable over five years for the remainder.  Upon information and belief, Defendant NYPIA only purchased the assets of MSG, Inc., there was no debt of MSG, Inc. transferred.

51.   The assets of MSG Inc. that were sold to Defendant NYPIA included all membership interests in GH Insurance Agency LLC, Rockford Insurance Agency LLC; the assets of the assumed names MSG Associates, MSG Insurance Agency and Morris Schnoor & Gremel, all customer accounts; furniture, equipment, furnishings, software and all contents of MSG Inc.'s current offices, chattel paper, receivables, deposit accounts and rights to payment and all general intangibles and all claims and awards

in the causes of action pending in Kent County Circuit Court Case No. 07-06441-CR entitled *Morris v. Schnoor, et. al.*

52.   William Woodworth signed the Bill of Sale as a member of Defendant New York Private Insurance Agency, LLC.  William Woodworth signed a promissory note dated November 21, 2008 in the amount of $295,000.  Guy Hiestand became a 50% owner of Defendant NYPIA shortly after the sale.

53.   Guy Hiestand is a business partner of William Woodworth in an entity called Gauntlet Real Estate, LLC (E1767C).  Guy Hiestand advised Mr. Woodworth of a business opportunity that he knew of in the insurance industry because Guy Hiestand did accounting work for one of the partners of the insurance company.  The partner that Guy Hiestand did accounting work for was the Debtor and MSG Inc.

54.   Upon information and belief, Guy Hiestand arranged through Defendant Dave Charron of Defendant Charron & Hanisch for the sale of the MSG Inc. assets to William Woodworth through a company named NYPIA (E1548K).  Defendant NYPIA was formed on November 12, 2008 with a mailing address of 170 Marcell Drive NE; Rockford, MI.  The name under which Defendant NYPIA conducts business is Great Lakes Risk Management LLC.  Great Lakes Risk Management LLC and Defendant NYPIA conduct business at 170 Marcell, Rockford, MI 49341.

55.   GH Insurance Agency, LLC operated under the name MSG Insurance Agency (E0274W).  As of April 24, 2009 GH Insurance Agency LLC operated under the assumed name Great Lakes Risk Management (D25258) located at 170 Marcell Drive, Rockford, MI 49341.  As of May 29, 2008 son Joshua Schnoor was the managing member of GH Insurance Agency, LLC and Debtor was the President.

12

56.    Rockford Insurance Agency, LLC (D25568) conducted business at 170 Marcell, Rockford, MI.    As of May 29, 2008 son Joshua Schnoor was the managing member of Rockford Insurance Agency LLC and Debtor was the President.    As of April 24, 2009 Rockford Insurance Agency, LLC operated under the assumed name Great Lakes Risk Management, LLC.

57.    Morris Schnoor and Gremel Benefits LLC (D25258) was formed on October 29, 2007. On December 27, 2007 Debtor, as a member of Morris Schnoor and Gremel Benefits LLC filed a Certificate of Amendment to the Articles of Organization changing the name of the LLC to MSG Benefits, LLC.    As of July 8, 2008 Tyler Velting, Debtor's son-in-law was named the initial manager of MSG Benefits, LLC by Amendment signed by son Joshua Schnoor as a member of MSG Benefits, LLC.    As of April 24, 2009, MSG Benefits, LLC conducted business under the assumed name Great Lakes Risk Management located at 170 Marcell Dr. Rockford, MI.

58.    On November 21, 2008 Defendant NYPIA purchased the assets of MSG, Inc. and granted a new security interest to Defendant Charron & Hanisch in the assets of Defendant NYPIA including the MSG, Inc. assets that Defendant NYPIA purchased.    On December 16, 2009, Defendant Charron & Hanisch filed a UCC indicating the law firm held a secured interest in "all assets currently owned by debtor (NYPIA) and/or all assets hereinafter acquired by debtor (NYPIA)".

59.    Upon information and belief immediately after the asset sale to Defendant NYPIA by Defendant Charron & Hanisch PLC, all the assets of MSG, Inc. were turned over to Great Lakes Risk Management, the assumed name under which Defendant NYPIA conducts business.

## THE DIVORCE

60.    On January 14, 2009, a final Consent Judgment of Divorce was filed in the Circuit Court for Kent County, Family Law Division, in the matter of *Jane T. Schnoor, Plaintiff v. Robert Judd Schnoor, Defendant*, Case No. 08-10612-DO.

61.    In paragraph A under Alimony on page 4, paragraph 1 of the Divorce Decree Property Settlement, Jane Schnoor is to receive the marital home and Debtor is responsible for payment of all debts associated with the marital home. Jane T. Schnoor is also to receive all proceeds from any sale of the marital home. The marital home had an SEV in 2008 of $315,300.

62.    On page 5 paragraph 7 of the Divorce Decree Property Settlement Jane T. Schnoor is to receive all interest in any indebtedness or unpaid promissory notes from any of the children of the parties regardless of whether the indebtedness was payable to Jane Schnoor or the Debtor or their respective trusts.

63.    On page 5, paragraph 8 of the Divorce Decree Property Settlement Debtor transferred all value, income, profit or benefit attributable to Morris, Schnoor & Gremmel Inc. and Debtor agreed to hold all the MSG, Inc. stock in trust for the exclusive benefit of Jane Schnoor. Debtor represented that the stock interest in MSG, Inc. was "now worthless".

64.    On or about April 24, 2009, three months after the bankruptcy filing, Jane T. Schnoor established a trust pursuant to the divorce settlement entitled The First Amended and Restated Jane T. Schnoor - Morris Schnoor and Gremmel, Inc. Revocable Trust. Debtor or Jane T. Schnoor put all the stock interests in MSG, Inc. contributed by R. Judd Schnoor and R. Judd Schnoor, Trustee of the R. Judd Schnoor Trust u/a/d

5/30/84 into the Jane T. Schnoor First Amended Trust on or about April 24, 2009. The First Amended Trust of Jane T. Schnoor removed R. Judd Schnoor as trustee and named son Joshua Schnoor as Trustee and daughter Suzanna Velting as Successor Trustee.

65.    On page 6, paragraph 8 of the Divorce Decree, Debtor transferred his interest in a promissory note from Morris, Schnoor & Gremel, Inc. (sic) payable to Debtor in the original principal amount of $124,984.30 to Jane T. Schnoor claiming it was worthless.

66.    On page 6, paragraph 9 of the Divorce Decree, Debtor transferred one half his interest in any recovery received in a lawsuit pending in Kent County Circuit Court, Case No. 07-06441-CR *Glenn Morris v. R. Judd Schnoor, et. al* to Jane T. Schnoor.  Debtor further agreed to fund the litigation completely.

67.    Jane T. Schnoor is not an officer or director of MSG, Inc., nor has she contributed to the initiation or continuation of the lawsuit that involves the recovery of money that MSG, Inc. and/or R. Judd Schnoor paid to Glenn Morris on a stock purchase agreement that was allegedly breached.

68.    On page 6, paragraph 10 of the Divorce Decree Debtor transferred one-half of all of his stock interest in Accurate Construction Company to Jane T. Schnoor.

69.    Relatives and business partners of the Debtor are insiders for purposes of 11 U.S.C. § 101 and § 550.

70.    Debtor retained possession and/or actual and/or constructive control over most of the assets by transferring them to family members or close business partners.

71.   On or about May 1, 2003, Debtor was indebted to Citimortgage for at least $229,301.00 for a first mortgage on his home located at 6973 Wildermere Drive NE in Rockford, MI.   Upon information and belief a substantial amount of the above indebtedness remained unpaid as of the date of filing bankruptcy.

72.   On or about December 23, 2004, Debtor was indebted to Bank of America for at least $236,106.00 on a second mortgage on his home located at 6973 Wildermere Drive NE in Rockford, MI. Upon information and belief a substantial amount of the above indebtedness remained unpaid as of the date of filing bankruptcy.

73.   On or about March 29, 2005 Debtor gave Macatawa Bank a personal guaranty for Belding Commons, Inc. in the amount of $2,226,000.00. Upon information and belief a substantial amount of the above indebtedness remained unpaid as of the date of filing bankruptcy.

74.   Sometime in September 2006, Debtor signed a personal guaranty to Macatawa Bank for the property at 65 S. Main St. Rockford, MI in the amount of $1,988,101.48.   Upon information and belief a substantial amount of the above indebtedness remained unpaid as of the date of filing bankruptcy.

75.   On or about May 4, 2007 Debtor gave Cornerstone Community Bank a personal guaranty for the JSRF, LLC commercial real estate development in the amount of $2.680,000.00.   Upon information and belief a substantial amount of the above indebtedness remained unpaid as of the date of filing bankruptcy.

76.   On or about August 26, 2007 Debtor purchased the stock of MSG, Inc. from the Glenn Morris Trust for $2,500,000.   A judgment in that amount was entered by the Kent County Circuit Court.   On the date of filing, Debtor owed approximately

$2,267,187.72 on this debt.  Upon information and belief a substantial amount of the above indebtedness remained unpaid as of the date of filing bankruptcy.

77.   Debtor stated on his Schedules that he was indebted to REWS, LLC in the amount of $400,000 but revised the schedules to show he was indebted to REWS, LLC in the amount of $200,000. Upon information and belief a substantial amount of the above indebtedness remained unpaid as of the date of filing bankruptcy.

78.   Upon information and belief, before January 12, 2008 a group of advisors to Debtor including Defendant David Charron and Joshua Schnoor were involved in attempting to make Debtor judgment proof.  It appears all, or the majority of, the transfers or actions described in paragraphs 7-78 above were part of a calculated, concerted plan or strategy by the Debtor acting in concert with, and/or, under the advice of others.

79.   All the transfers collectively made by Debtor were of substantially all of the debtor's assets.

**COUNT 1**
**AVOIDANCE OF TRANSFER OF SECURITY INTEREST IN ASSETS OF MORRIS SCHNOOR AND GREMMEL, INC. (MSG, INC.) TO DEFENDANT DAVID CHARRON AND/OR DEFENDANT CHARRON & HANISCH PLC AS A FRAUDULENT TRANSFER UNDER § 548**

80.   Plaintiff re-alleges the allegations contained in paragraphs 1- 79 above as if fully set forth herein.

81.   On May 22, 2008 Debtor allegedly granted Defendant Charron & Hanisch a security interest in all the assets of MSG, Inc. and on November 21, 2008 Defendant Charron & Hanisch sold the assets secured by the security interest at a private sale.

17

82. The transfer of a security interest in the assets of MSG, Inc. on May 22, 2008 by Debtor to Defendant Charron & Hanisch was to secure current attorney fees of approximately $286,000 plus future representation.

83. The assets transferred to Defendant Charron & Hanisch included all membership interests in GH Insurance Agency. LLC; Rockford Insurance Agency LLC; MSG Associates; MSG Insurance Agency; and Morris Schnoor & Gremel and all claims and awards in the causes of action presently pending in Kent County Circuit Court Case No. 07-06441-CR, *Morris v. Schnoor, et al.*

84. As of January 23, 2008, GH Insurance Agency LLC conducted business at 170 Marcell Drive; Rockford, MI . Debtor's son Joshua Schnoor is the manager of GH Insurance Agency LLC.

85. On February 25, 2008 son Joshua Schnoor filed a Certificate of Assumed Name indicating that Rockford Insurance Agency LLC located at 8 E. Bridge St. Suite 100; Rockford, MI would transact business under the name MSG Associates.

86. On May 29, 2008 Debtor as President of MSG, Inc. signed a Certificate of Amendment to the Articles of Organization of Rockford Insurance Agency LLC indicating that the initial manager of GH Insurance Agency LLC will be son Joshua Schnoor at 4949 Plainfield NE; Grand Rapids, MI.

87. Defendant Charron & Hanisch conducts business at 4949 Plainfield NE.

88. Defendant New York Private Insurance Agency, LLC ("NYPIA") was created November 12, 2008. Defendant NYPIA conducts business under the name Great Lakes Risk Management LLC. The address of Defendant NYPIA is 170 Marcell Drive NE; Rockford, MI.

18

89. On April 23, 2009 Debtor's son Joshua Schnoor as Manager filed an Annual Statement for Rockford Insurance Agency showing the resident agent address at 170 Marcell, Rockford, MI.

90. On April 24, 2009 Debtor's son Joshua Schnoor as Manager filed a Certificate of Assumed Name indicating that Rockford Insurance Agency LLC would transact business under the name Great Lakes Risk Management LLC.

91. Guy Hiestand is a member of Great Lakes Risk Management LLC. On April 24, 2009 Guy Hiestand filed a Certificate of Assumed Name with the State of Michigan indicating that Defendant NYPIA LLC would operate under the name Great Lakes Risk Management LLC.

92. On or about July 21, 2009 son Joshua Schnoor indicated that GH Insurance Agency LLC would be terminated and the new assumed name was MSG Associates.

93. On July 21, 2009, son Joshua Schnoor as manager of Rockford Insurance Agency filed a Certificate of Termination of MSG Associates as an assumed name of Rockford Insurance Agency. Son Joshua Schnoor indicated the registered office for Rockford Insurance Agency was 170 Marcell; Rockford, MI.

94. On July 23, 2009 son Joshua Schnoor as manager of Rockford Insurance Agency LLC terminated the assumed name RIG under which Rockford Insurance Agency transacted business.

95. On September 15, 2009 Defendant Joshua Schnoor of 170 Marcell, Rockford, MI filed a Certificate of Assumed Name indicating that Rockford Insurance Agency LLC would conduct business under the name Morris Schnoor & Gremmel.

96. On November 30, 2009 Defendant Joshua Schnoor signed the Annual Statement of GH Insurance Agency LLC as manager of the LLC and indicated a resident agent address of 170 Marcell; Rockford, MI.

97. As of late October 2007 Debtor owned 100% of the assets of Morris Schnoor & Gremel Inc.

98. All of the assets of GH Insurance Agency LLC and Rockford Insurance Agency were owned by MSG, Inc. and Debtor granted a security interest to Defendant Charron & Hanisch PLC in those subsidiaries by virtue of the security interest in all the assets of MSG, Inc.

99. On or about May 15, 2008 Debtor allegedly signed a document entitled Account Stated in which MSG, Inc. agreed that it owed Defendant Charron & Hanisch PLC the sum of $286,730.95.

100. As of May 22, 2008 Debtor owned 100% of the assets of MSG, Inc.

101. On May 22, 2008, Debtor was deposed at 1:30 pm by Attorney Stan Stek in the state court proceeding. Debtor was asked whether he had transferred any of the property of MSG, Inc. as of that date and Debtor responded no.

102. On May 22, 2008, Debtor as President of MSG, Inc. allegedly signed a security agreement granting Defendant Charron & Hanisch PLC a security interest in all assets of MSG, Inc. to secure payment of attorney fees and allow Debtor additional time from the date of invoice to pay Defendant Charron & Hanisch PLC.

103. On May 22, 2008 Debtor as Director and sole member of MSG, Inc. also allegedly signed a Resolution of the Board of Directors authorizing MSG, Inc. to grant

Defendant Charron & Hanisch PLC a security in all of its assets for the purpose of securing past and future indebtedness of the Corporation.

104. Upon information and belief, the commissions and/or "contingency" payments payable to MSG, Inc. by the insurance companies for 2008 would have paid Defendant Charron & Hanisch in full.

105. The approximate value of the assets of MSG, Inc. at the time of the granting of the security interest to Defendant Charron & Hanisch PLC on May 22, 2008 was in excess of $2 million.

106. The transfer of the security interest to Defendant Charron & Hanisch PLC was of an interest of the Debtor in property.

107. The transfer of the security interest to Defendant Charron & Hanisch was made within 2 years before the date of filing the petition.

108. The transfer was made with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, incurred.

109. Debtor was insolvent on the date of transfer or became insolvent as a result of such transfer.

110. Debtor received less than a reasonably equivalent value in exchange for the security interest in all the assets of MSG, Inc. granted to Defendant Charron & Hanisch.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A. Avoid the transfer of the security interest in assets of MSG, Inc. to Defendant David Charron and/or Charron & Hanisch PLC as fraudulent under § 548;

21

B.   Order the turnover by Defendant David Charron and/or Defendant Charron &

Hanisch PLC of the security interest in the assets of MSG, Inc. or its value;

C.   Grant a money judgment against Defendant David Charron and/or Defendant

Charron & Hanisch PLC for the Plaintiff's actual costs, reasonable attorney fees and pre-

judgment interest to the extent allowed by law;

D.   Grant such other or further relief as this Court deems just and equitable.

## COUNT 2
### AVOIDANCE OF TRANSFER OF SECURITY INTEREST IN ASSETS OF MORRIS SCHNOOR AND GREMMEL, INC. (MSG, INC.) TO DEFENDANT DAVID CHARRON AND/OR DEFENDANT CHARRON & HANISCH PLC AS A FRAUDULENT TRANSFER UNDER § 544 AND M.C.L.A. § 566.34

111.   Plaintiff re-alleges the allegations contained in paragraphs 1- 110 above as

if fully set forth herein.

112.   Debtor's transfer of the security interest in MSG, Inc. assets to Defendant

David Charron and/or Defendant Charron & Hanisch PLC was made with actual intent to

hinder, delay or defraud a creditor of the debtor.

113.   The transfer was for less than reasonably equivalent value.

114.   Debtor intended to incur, or believed or reasonably should have believed

that he would incur, debts beyond his ability to pay as they became due at the time of

the transfer.

115.   The transfer was made to an insider.

116.   At the time of the transfer the Debtor had already been sued and had been

threatened with further suits.

117.   The Debtor retained possession and/or actual and/or constructive control

of the property transferred after the transfer.

22

118. The transfer was of a substantially portion of all the debtor's assets.

119. The debtor was insolvent or became insolvent shortly after the transfer was made.

120. The transfer occurred shortly before or shortly after a substantial debt was incurred by the Debtor.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A. Avoid Debtor's transfer of security interest in MSG, Inc. to Defendant David Charron and/or Defendant Charron & Hanisch PLC pursuant to § 544 and MCLA § 566.34 as fraudulent;

B. Grant a money judgment against Defendant David Charron and/or Defendant Charron & Hanisch PLC for the Plaintiff's actual costs, reasonable attorneys fees and pre-judgment interest to the extent allowed by law;

C. Grant such other or further relief as this Court deems just and equitable.

**COUNT 3**
**AVOIDANCE OF TRANSFER OF SECURITY INTEREST IN ASSETS OF MORRIS SCHNOOR AND GREMMEL, INC. (MSG, INC.) TO DEFENDANT DAVID CHARRON AND/OR DEFENDANT CHARRON & HANISCH PLC AS A FRAUDULENT TRANSFER UNDER § 544 AND M.C.L.A. § 566.35(1)**

121. Plaintiff re-alleges the allegations contained in paragraphs 1- 120 above as if fully set forth herein.

122. Debtor did not receive equivalent value for the transfer of the security interest in all the assets of MSG, Inc to Defendant Charron & Hanisch.

123. Debtor was insolvent or made insolvent by virtue of the transfer.

124. There existed a creditor whose claim arose before the transfer was made

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A.    Avoid the transfer of the security interest in the assets of MSG, Inc. to Defendant David Charron and/or Defendant Charron & Hanisch PLC pursuant to § 544(b) and MCLA § 566.35(1) as fraudulent;

B.    Grant a money judgment against Defendant David Charron and/or Defendant Charron & Hanisch PLC for the Plaintiff's actual costs, reasonable attorneys fees and pre-judgment interest to the extent allowed by law;

C.    Grant such other or further relief as this Court deems just and equitable.

### COUNT 4
### AVOIDANCE OF TRANSFER OF SECURITY INTEREST IN ASSETS OF MORRIS SCHNOOR AND GREMMEL, INC. (MSG, INC.) TO DEFENDANT DAVID CHARRON AND/OR DEFENDANT CHARRON & HANISCH PLC AS A FRAUDULENT TRANSFER UNDER § 544 AND M.C.L.A. § 566.35(2)

125.    Plaintiff re-alleges the allegations contained in paragraphs 1- 124 above as if fully set forth herein.

126.    Debtor transferred the security interest in all the assets of MSG, Inc. on May 22, 2008 to an insider.

127.    The transfer of the security interest in all the assets of MSG, Inc. to Defendant Charron & Hanisch was for an antecedent debt.

128.    Debtor was insolvent at the time of the transfer.

129.    Defendant Charron & Hanisch had reasonable cause to believe that the debtor was insolvent at the time the security interest was given to Defendant Charron & Hanisch.

130.    There existed a creditor whose claim arose before the date of the transfer of the security interest to Defendant Charron & Hanisch.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

24

A.    Avoid the transfer of the security interest in the assets of MSG, Inc.  to Defendant David Charron and/or Defendant Charron & Hanisch PLC pursuant to § 544(b) and MCLA § 566.35(2) as fraudulent;

B.    Grant a money judgment against Defendant David Charron and/or Defendant Charron & Hanisch PLC for the Plaintiff's actual costs, reasonable attorneys fees and pre-judgment interest to the extent allowed by law;

C.    Grant such other or further relief as this Court deems just and equitable.

### COUNT 5
### AVOIDANCE OF TRANSFER OF SECURITY INTEREST IN ASSETS OF MORRIS SCHNOOR AND GREMMEL, INC. (MSG, INC.) TO DEFENDANT DAVID CHARRON AND/OR DEFENDANT CHARRON & HANISCH PLC AS A PREFERENTIAL TRANSFER UNDER § 547

131.  Plaintiff re-alleges the allegations contained in paragraphs 1- 130 above as if fully set forth herein.

132.  Debtor's alleged May 22, 2008 transfer to Defendant David Charron and/or Defendant Charron & Hanisch PLC of a security interest in all the assets of MSG, Inc. was the transfer of an interest of the debtor in property.

133.  The transfer was made to or for the benefit of a creditor.

134.  The transfer to Defendant David Charron and/or Defendant Charron & Hanisch PLC of the security interest in MSG, Inc assets was made on account of an antecedent debt.

135.  The alleged May 22, 2008 transfer to Defendant David Charron and/or Defendant Charron & Hanisch PLC of the security interest in MSG, Inc. assets was made while the debtor was insolvent.

136.  The transfer was made to an insider within one year of filing the petition.

137. The transfer enabled Defendant David Charron and/or Defendant Charron & Hanisch PLC to receive more than such creditor would receive under the Chapter 7 had the transfer not been made.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A. Avoid the transfer of the security interest by Debtor to Defendant David Charron and/or Defendant Charron & Hanisch PLC pursuant to § 547(b) as a preferential transfer;

B. Grant a money judgment against Defendant David Charron and/or Defendant Charron & Hanisch for the Plaintiff's actual costs, reasonable attorneys fees and pre-judgment interest to the extent allowed by law;

C. Grant such other or further relief as this Court deems just and equitable.

## COUNT 6
### AVOIDANCE OF SALE OF MSG, INC. ASSETS TO NEW YORK PRIVATE INSURANCE AGENCY ("NYPIA")AS A FRAUDULENT TRANSFER UNDER § 548

138. Plaintiff re-alleges the allegations contained in paragraphs 1- 137 above as if fully set forth herein.

139. Defendant NYPIA was created for the purpose of purchasing the assets of MSG, Inc. from Defendant Charron & Hanisch PLC.

140. On or about November 7, 2008 through an Asset Purchase Agreement Defendant Charron & Hanisch PLC agreed to sell the assets of MSG, Inc. (including the business of GH Insurance Agency LLC, the business of Rockford Insurance Agency and all the remaining business of MSG, Inc.) to Defendant New York Private Insurance Company LLC located at 170 Marcell Drive NE; Rockford, MI for a total purchase price of $395,000.

26

141. The assets of MSG, Inc. were sold by Defendant Charron & Hanisch by private sale on November 21, 2008 to Defendant NYPIA for $395,000.

142. Mr. William Woodworth was initially the sole member of Defendant NYPIA but upon information and belief, Mr. Woodworth through Defendant NYPIA was used as a middle man/entity to "purchase" the MSG, Inc. assets.

143. Defendant NYPIA conducts business under the assumed name Great Lakes Risk Management.  Guy Hiestand was the initial manager of Defendant NYPIA and Guy Heistand became a 50% owner of Defendant NYPIA and is the current manager/partial owner of Defendant NYPIA.  Great Lakes Risk Management conducts business at 170 Marcel in Rockford Michigan.

144. Debtor is currently employed by Great Lakes Risk Management.

145. Debtor was/is a business partner of Guy Heistand.

146. Guy Hiestand has been Debtor's CPA and advisor for years prior to the sale of MSG, Inc. assets from Defendant Charron & Hanisch to Defendant NYPIA.

147. Upon information and belief, at closing on November 21, 2008 on the private sale of the MSG, Inc. assets to Defendant NYPIA a $100,000 down payment was made to Defendant Charron & Hanisch and/or Defendant David Charron.

148. Upon information and belief, the $100,000 down payment to Defendant Charron & Hanisch for the assets of MSG, Inc. came from an existing MSG, Inc. Fifth Third Bank line of credit for which Mr. William Woodworth had to provide a personal guaranty.

149. Upon information and belief, the $100,000 was repaid to Fifth Third from the 2008 insurance commissions and/or "contingency" payments owed to MSG, Inc.

27

150. Mr. William Woodworth personally did not pay any money for the purchase of MSG, Inc. assets from Defendant Charron & Hanisch PLC.

151. Upon information and belief Mr. William Woodworth did not conduct any due diligence in acquiring the assets of MSG, Inc.

152. Upon information and belief Mr. William Woodworth did not review the books and records of MSG, Inc. at any time.

153. Upon information and belief Mr. William Woodworth did not obtain a list of the assets of MSG, Inc. that he purchased prior to the sale.

154. After the sale of the MSG, Inc. assets to Defendant NYPIA, the remaining business of MSG, Inc. was operated from 170 Marcell, Rockford, MI under the name Great Lakes Risk Management d/b/a of Defendant NYPIA. All of the assets owned by MSG, Inc. including but not limited to the insurance contracts, insureds, commissions previously owned by one or more of MSG, Inc.'s subsidiaries were transferred to Defendant NYPIA.

155. MSG, Inc. transacted business under the names Rockford Insurance and GH Insurance. The assets of both these entities were sold through the sale of assets of MSG, Inc. to Defendant NYPIA.

156. State court testimony in August and September 2008 showed that the gross sales commissions and "contingency" payments at the time of transfer of the assets of MSG, Inc. to Defendant Charron & Hanisch and at the time of sale of the assets to Defendant NYPIA were approximately $1.7 million to $2 million a year and the value of the assets of MSG, Inc. would be 1.25 to 1.50 times annual commissions.

157. Upon information and belief Defendant NYPIA was set up by Guy Hiestand who was/is a business partner of Debtor in Silverstone Oil Company and in Accurate Premium Financing Inc. Upon information and belief Guy Hiestand was instrumental in arranging the sale of MSG, Inc. assets to his business partner William Woodworth.

158. William Woodworth derived no benefit from the purchase of the assets of MSG, Inc.

159. Upon information and belief, the purchase of the MSG, Inc. assets by Defendant NYPIA was nothing more than a straw purchase through William Woodworth. It appears that William Woodworth did little more than speak with Guy Hiestand and Defendant David Charron.

160. Defendant Charron & Hanisch PLC is an insider based on Defendant David Charron's business association with Debtor and his personal relationship with Debtor which is far more involved, extensive and interdependent than the usual attorney client relationship. Defendant David Charron was a business partner of Debtor in Sundance Development. Defendant Charron & Hanisch PLC set up many of the entities mentioned in this complaint and assisted Debtor in becoming judgment proof after Debtor was ordered by the Kent County Circuit Court to pay his former business partner Glenn Morris $2.5 million in August 2007.

161. Upon information and belief, Defendant David Charron and/or Defendant Charron & Hanisch PLC reduced its debt on the sale of MSG, Inc. assets to $295,000 and has since been paid in full.

29

162. Upon information and belief Defendant Charron & Hanisch was paid in full with the commissions and/or "contingency" payments generated by MSG, Inc. those accounts being serviced by Great Lakes Risk Management.

163. Upon information and belief, the approximate value of the assets of MSG, Inc. at the time of the sale to Defendant NYPIA on November 7, 2008 was at a minimum in excess of $2 million.

164. The transfer of the MSG, Inc. assets to Defendant NYPIA was of an interest of the debtor in property that was made within 2 years before the date of filing the petition.

165. The transfer of the assets of MSG, Inc. was to an immediate or mediate transferee.

166. The transfer was made with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, incurred.

167. Debtor was insolvent on the date of transfer or became insolvent as a result of such transfer.

168. Debtor received less than a reasonably equivalent value in exchange for the sale of all the assets of MSG, Inc. by Defendant Charron & Hanisch to Defendant NYPIA.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A.   Avoid the sale of the assets of MSG, Inc. to Defendant NYPIA as fraudulent under § 548;

B.   Order the turnover by Defendant NYPIA of the assets of MSG, Inc. or its value;

C.  Grant a money judgment against Defendant NYPIA for the Plaintiff's actual costs, reasonable attorney fees and pre-judgment interest to the extent allowed by law;

D.  Grant such other or further relief as this Court deems just and equitable.

### COUNT 7
### AVOIDANCE OF SALE OF MSG, INC. ASSETS TO NEW YORK PRIVATE INSURANCE AGENCY AS A FRAUDULENT TRANSFER UNDER § 544(b) AND M.C.L.A. § 566.34

169.  Plaintiff re-alleges the allegations contained in paragraphs 1- 168 above as if fully set forth herein.

170.  The transfer of the MSG, Inc. assets to Defendant NYPIA was made with actual intent to hinder, delay or defraud a creditor of the debtor.

171.  The transfer was for less than reasonably equivalent value.

172.  Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due at the time of the transfer.

173.  The transfer was made to an insider.

174.  At the time of the transfer of the MSG, Inc. assets to Defendant NYPIA the Debtor had already been sued or had been threatened with further suits.

175.  The Debtor retained possession or control of the property transferred after the transfer.

176.  The transfer was of a substantial portion of all the debtor's assets.

177.  The debtor was insolvent or became insolvent shortly after the transfer was made.

178. The transfer occurred shortly before or shortly after a substantial debt was incurred.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A. Avoid the transfer by Defendant Charron & Hanisch PLC of the assets of MSG, Inc. to Defendant NYPIA pursuant to § 544 and MCLA § 566.34 as fraudulent;

B. Grant a money judgment against Defendant NYPIA for the Plaintiff's actual costs, reasonable attorney fees and pre-judgment interest to the extent allowed by law;

C. Grant such other or further relief as this Court deems just and equitable.

## COUNT 8
### AVOIDANCE OF SALE OF MSG, INC. ASSETS TO DEFENDANT NEW YORK PRIVATE INSURANCE AGENCY AS A FRAUDULENT TRANSFER UNDER § 544(b) AND M.C.L.A. § 566.35(1)

179. Plaintiff re-alleges the allegations contained in paragraphs 1- 178 above as if fully set forth herein.

180. Debtor did not receive equivalent value for the transfer of MSG, Inc. assets to Defendant NYPIA.

181. Debtor was insolvent or made insolvent by virtue of the transfer.

182. There existed a creditor whose claim arose before the transfer was made.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A. Avoid the transfer of MSG, Inc. assets to Defendant NYPIA pursuant to § 544(b) and MCLA § 566.35(1) as fraudulent;

B. Grant a money judgment against Defendant NYPIA for the Plaintiff's actual costs, reasonable attorney fees and pre-judgment interest to the extent allowed by law;

C. Grant such other or further relief as this Court deems just and equitable.

## COUNT 9
## AVOIDANCE OF SALE OF MSG, INC. ASSETS TO DEFENDANT NEW YORK PRIVATE INSURANCE AGENCY AS A FRAUDULENT TRANSFER UNDER § 544(b) AND M.C.L.A. § 566.35(2)

183. Plaintiff re-alleges the allegations contained in paragraphs 1- 182 above as if fully set forth herein.

184. The transfer of the MSG, Inc. assets was to an insider of an insider.

185. The transfer of the MSG, Inc. assets was for an antecedent debt due to Defendant Charron & Hanisch PLC by Debtor.

186. Debtor was insolvent at the time of the transfer.

187. Defendant Charron & Hanisch and Guy Heistand had reasonable cause to believe that the Debtor was insolvent at the time the MSG, Inc. assets were sold to Defendant NYPIA for less than a reasonably equivalent value.

188.    There existed a creditor of Debtor whose claim arose before the date of the transfer.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A.  Avoid the transfer of the MSG, Inc. assets to Defendant NYPIA pursuant to § 544(b) and MCLA § 566.35(2) as fraudulent;

B.  Grant a money judgment against Defendant David Charron and/or Defendant Charron & Hanisch and/or NYPIA for the Plaintiff's actual costs, reasonable attorney fees and pre-judgment interest to the extent allowed by law;

C.  Grant such other or further relief as this Court deems just and equitable.

## COUNT 10
## AVOIDANCE OF PAYMENT OF ATTORNEY FEES THROUGH THE TRANSFER OF DEBTOR'S PERSONAL PROPERTY TO DEFENDANT DAVID CHARRON AS A FRAUDULENT TRANSFER UNDER § 548

189.   Plaintiff re-alleges and incorporates by reference paragraphs 1- 188 above as though fully set forth herein.

190.   Debtor scheduled a 2006 Malibu I-Ride Boat on Schedule B.

191.   Just prior to filing bankruptcy, Debtor owned a shore station and a pontoon boat.

192.   During a 2004 examination and during the 341 meeting, Debtor testified that Defendant David Charron owns the Malibu I-Ride Boat, the shore station and the pontoon boat.

193.   Debtor transferred the Malibu I-Ride boat, the shore station and the pontoon boat ("the personal property") to Defendant David Charron as partial payment of past due attorney fees.  Debtor stated that he was credited approximately $30,000 towards his outstanding attorney fee debt to Defendant David Charron.

194.   The transfer of the personal property to Defendant David Charron was of an interest of the debtor in property that was made within 2 years before the date of filing the petition.

195.   The transfer was made with actual intent to hinder, delay or defraud any entity to which the debtor was or became, or after the date of such transfer was made, incurred.

196.   Debtor was insolvent on the date of the transfer or became insolvent as a result of the substantial transfer of assets to family members and insiders.

197.   Debtor received less than a reasonably equivalent value in exchange for the transfer of the personal property to Defendant David Charron.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A.   Avoid the transfer of the personal property to Defendant David Charron as fraudulent under § 548;

B.   Order the turnover by Defendant David Charron of the personal property or its value;

C.   Grant a money judgment against Defendant David Charron for the Plaintiff's actual costs, reasonable attorney fees and pre-judgment interest to the extent allowed by law;

D.   Grant such other or further relief as this Court deems just and equitable.

## COUNT 11
### AVOIDANCE OF PAYMENT OF ATTORNEY FEES THROUGH THE DEBTOR'S TRANSFER OF PERSONAL PROPERTY TO DEFENDANT DAVID CHARRON AS A PREFERENTIAL TRANSFER UNDER § 547

198.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 197 above as though fully set forth herein.

199.  Debtor's transfer to Defendant David Charron of the personal property to reduce Debtor's indebtedness to Defendant David Charron and or Defendant Charron & Hanisch PLC was a transfer of an interest of the debtor in property.

200.  The transfer was made to or for the benefit of a creditor.

201.  The transfer was made on account of an antecedent debt.

202.  The transfer was made to an insider within one year of filing the petition.

203.  The transfer enabled Defendant David Charron and/or Defendant Charron & Hanisch PLC to receive more than such creditor would receive under the Chapter 7 had the transfer not been made.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully prays this Court to;

A. Avoid the transfer of the Debtor's personal property to Defendant David Charron pursuant to § 547(b) as a preferential transfer;

B. Grant a money judgment against Defendant David Charron for the Plaintiff's actual costs, reasonable attorneys fees and pre-judgment interest to the extent allowed by law;

C. Grant such other or further relief as this Court deems just and equitable.

## COUNT 12
## RECOVERY OF AVOIDED TRANSFERS PURSUANT TO § 550

204. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 203 above as though fully set forth herein.

205. Upon avoidance of the transfers under any or all of Counts 1-5, 10 or 11 above, the Trustee is entitled to recover the property transferred, or the value of the transfer from the initial transferee of the transfer pursuant to § 550.

206. Under Counts 1-5, 10 and 11, Defendant David Charron and/or Defendant Charron & Hanisch PLC are the initial transferees.

207. Under Counts 6 through 9 Defendant NYPIA is the immediate or mediate transferee of the assets of MSG, Inc. through the nominee name Defendant NYPIA.

208. Under Counts 10 and 11 Defendant David Charron and/or Defendant Charron & Hanisch PLC are the parties for whose benefit the transfers of Debtor's personal property were made.

209. Under Counts 1-9, the Defendant David Charron and/or Defendant Charron & Hanisch PLC are the parties for whose benefit the transfer of the MSG, Inc. assets were made.

WHEREFORE, Plaintiff Trustee Jeff A. Moyer respectfully requests that this Court:

A. Enter a money judgment in favor of the Plaintiff Trustee and against Defendant David Charron and/or Charron & Hanisch PLC pursuant to §550 for the value of the transfers avoided by this Court under Counts 1- 5, 10 and 11 on which Defendant is found to be the initial transferee, or a party for whose benefit said transfer was made;

B. Enter a money judgment in favor of the Plaintiff Trustee and against Defendant NYPIA on Counts 6-9 as immediate or mediate transferee of the assets of MSG, Inc. from such initial transferee if such person exists;

C. Award the Plaintiff Trustee his actual costs, reasonable attorney fees and pre-judgment interest to the extent allowed by law;

D. Grant such other or further relief as this Court deems just and equitable.

Respectfully submitted,

Purkey & Associates, PLC
Attorney for Trustee Jeff Moyer

*Edith A. Landman*

Edith A. Landman (P29409)
2251 East Paris Ave SE; Ste. B
Grand Rapids, MI 49546
616.940.0553
Landman@purkeyandassociates.com

Dated: January 21, 2011