UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

    ROBERT J. SCHNOOR,

        Debtor.

_____/

JEFF MOYER,

        Trustee,

v.

CHARRON & HANISCH, PLC,  and
DAVID CHARRON, Individually,

        Defendants.

_____/

Case No. 09-00772-jrh
Chapter 13 filed: 1/28/09
Converted Chapter 7: 2/6/09
Hon.  Jeffrey R. Hughes

Adv. Pro. No. 11-80045-jrh

## **JOINT WRITTEN PRETRIAL STATEMENT AND DISCOVERY REPORT**

Plaintiff Trustee Jeff A. Moyer through his counsel Purkey & Associates PLC AND Defendants Charron & Hanisch, PLC and David Charron, through counsel, submit the following Joint Pretrial Statement pursuant to this Court's Order dated September 12, 2011.

1.    **Narrative of Facts & Law Regarding Claims and Defenses**.

**TRUSTEE'S POSITION**:  The Trustee challenges Debtor's transfer of a pontoon boat, a speed boat and a shore station to David Charron and/or his law firm Charron & Hanisch. The transfer of these assets occurred during the same month Debtor transferred a security

interest to Defendants in all the assets of Morris, Schnoor & Gremel, Inc.  Debtor was the sole shareholder and had custody of the assets of MSG, Inc. at the time of the transfer in May 2008.  The transfer of the personal property and the assets of MSG, Inc to Defendants left Debtor with little to no assets.  The remainder of all of Debtor's assets was transferred to his ex-wife Jane Schnoor through a Consent Judgment of Divorce that was filed January 14, 2009, two weeks before Debtor filed bankruptcy.  It is believed this transfer occurred with the assistance of David Charron.

The Trustee contends the transfers of Debtor's personal property to Defendants, the transfer of the security interest in all the assets of MSG, Inc. the transfer of the marital home, the assignment of the right to collect on promissory notes payable to Debtor, the right to receive proceeds from Kent County Circuit Court litigation, the stock of Accurate Construction Company, the interest of Debtor in Accurate Premium Financing to Jane Schnoor were part of a plan created by Debtor and others, including Defendants, to make Debtor judgment proof and to file bankruptcy with little to no assets.   The Trustee asserts that Defendants actively participated in a plan to make Debtor judgment proof before he filed bankruptcy.  The reason Debtor needed to be judgment proof is because a judgment was entered against him in August 2007 in the amount of $2.5 million and Debtor was a personal guarantor on several loans.

The Trustee is relying on §§ 548 for proving the fraudulent nature of the transfers and the overall scheme to defraud creditors, § 547 for a preferential transfer to an insider, § 542 for turnover of the speed boat that is property of the estate and § 550 to recover the assets or their value.  Transfers of additional assets to other family members and others show the full extent of the scheme to defraud.

**DEFENDANTS' POSITION**:    The Debtor was unable to pay the Defendant law firm for its services and so it accepted some used watercraft (a pontoon and speed boat) and a boat hoist in trade, and gave the Debtor a credit against its billings for $34,000 on May 30, 2008.    Defendant Charron & Hanisch PLC transferred its interest in the items to Defendant David Charron shortly thereafter.    The title to the pontoon boat transferred in June of 2008.    The title transfer of the speed boat was not accepted by the Secretary of State due to the existence of a previously undisclosed lien to Lake Michigan Credit Union. The Debtor continued making payments on the Malibu.    He then unexpectedly filed for bankruptcy protection in late January of 2009 after a surprise adverse ruling against him in a Kent County Circuit Court case.    The Debtor identified the Malibu as property of the bankruptcy estate and listed the credit union debt on his Schedule D.    He informed the trustee at the 341 meeting that he had transferred the boat to Defendants.    The Debtor subsequently reaffirmed the debt and continued making payments against the lien.

2.    **Basis for Jurisdiction**.

The Parties agree jurisdiction exists pursuant to 28 U.S.C. §§ 157(a) and 1334.

3.    **Statement Regarding Nature of Proceeding**.

The Parties agree this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(E)(F)(H) and (O).

4.    **Statement Regarding Non-Core Proceedings**.

Not applicable.

5.    **Consent to Bankruptcy Court Entering Final Judgment**

**TRUSTEE**:  On August 31, 2011, the Trustee filed his consent to the bankruptcy court entering a final appealable judgment in this case.  The Trustee did not receive any written or oral correspondence concerning this issue from Defendants.

**DEFENDANTS**:  Defendants filed their consent to the bankruptcy court's entry of a final appealable judgment in this case on August 30, 2011 (Docket entry 48).

6.    **Jury Demand**.

No jury demand was made.

7.    **Rule 26(a)(1) Disclosures**.

**TRUSTEE**:  The Trustee made the required Rule 26(a)(1) Initial Disclosures on October 17, 2011.  The Trustee requested Meidema Auctions to conduct a valuation of the assets transferred to David Charron, the two boats and the shore station.  The required Rule 7026 (f) meeting took place telephonically on September 27, 2011.  Mr. Charron is involved in litigation in Kent County Circuit Court concerning the transfer of the security interest in MSG, Inc. and the subsequent purchase of the MSG, Inc. assets by New York Private Insurance Agency.  The parties discussed conducting informal discovery.  Based on the decision to conduct discovery informally through e-mail requests and other informal requests, the Trustee sent an e-mail request for documents to David Charron on September 28, 2011.  A response was requested by October 28, 2011.  On November 2, 2011 Defendants advised the trustee that Defendants were aware that they owed the Trustee the documents requested and indicated Defendants were still working on them.

Mr. Charron stated that he would allow a valuation by Miedema and Miedema was contacted on October 17 and was given Mr. Charron's phone number to arrange for inspection of the two boats and the shore station.  This inspection has been completed by

Miedema and the Trustee sent the valuation amounts to Defendants via e-mail on November 10, 2011.

**DEFENDANTS**:  Defendants agree with the Trustee's characterization.  Defendants prefer the use of the term "boat hoist", rather than "shore station" to describe the equipment acquired from the Debtor.

8.   **Discovery Conducted to Date**.

Since this adversary was filed, the following discovery took place.

**TRUSTEE**:   On September 28, 2011, the Trustee sent an e-mail request for documents to David Charron.  A response is due on October 28, 2011.  If none is filed, a formal request for production of documents will be served on Defendants.  On November 7, 2011 the Trustee filed a Request for Production of Documents directed to Defendants and gave Defendants a production date for inspection and copying of December 1, 2011. Defendants produced a couple of months of billings concerning Debtor but the Trustee has requested additional billings for all work done for Debtor and his related companies.

On October 17, 2011 the Trustee requested Duane at Meidema Auctions to contact Mr. Charron and arrange for inspection of the personal property after which time the Trustee should have a value for each of the three items.  On November 7, 2011 Duane Mingerink of Meidema auctions provided the Trustee with an e-mail valuing the 2006 Malibu at $18,000 - $23,000.  The 2004 Bennington pontoon boat is valued at $7500 - $85,000 and the shorestation is valued at $2,000 to $2,500.  These are auction values.

**DEFENDANTS**:  Defendants requested a convenient date for the deposition of the Trustee on September 28, 2011 but did not receive a reply and so they noticed out the deposition of Mr. Moyer for November 22, 2011.    If this date does not work, Defendants

will accommodate Mr. Moyer's attendance at a more convenient date.    Mr. Moyer has also

been subpoenaed to produce documents to support his claims.

9.    **Additional Discovery**.

**TRUSTEE**:  Between the two 7026 disclosures, the parties have listed 13 persons

who may have knowledge of the transfers alleged in the complaint, although Defendants

assert that only David Charron and Debtor are witnesses.  The Trustee is contacting the

persons he believes have knowledge of this case and should be able to narrow the number

of persons who need to be deposed to less than 5.   No depositions have taken place as of

this date by the Trustee because the Trustee needs the responses to the document

production request before the depositions can be taken and be meaningful.  The Trustee

anticipates taking the deposition of Debtor, George Larimore and David Charron at a

minimum after the production of documents.  The Trustee requests an additional discovery

period of 2 months to January 11, 2011.

**DEFENDANTS**:  Defendants plan to take the deposition of the Trustee and review

the materials he has been subpoenaed to produce.   This may, but it is not expected to lead

to the need for further discovery.   Mr. Charron has agreed, at the request of the Trustee,  to

be interviewed by Mr. Debbaudt in lieu of his deposition,   If the Trustee proceeds with this

request, a convenient time for this interview will be scheduled.    Alternatively, the Trustee

may depose Mr. Charron.

10.    **Discovery Plan**.

**TRUSTEE**:  The parties did not discuss a specific plan of discovery other than

agreeing to informal e-mail requests for discovery; filing interrogatories, requests for

production of documents and taking depositions.  Defendants listed documents in their

7026 disclosures and have advised they are available for inspection at the office of Charron & Hanisch, PLC.  The Trustee's counsel contacted Defendants and requested a time when the documents would be available; Defendants advised they would provide the documents by e-mail but nothing has yet been provided with the exception of a couple months of billing that appear to be related to Debtor only.

**DEFENDANTS**:    Defendants produced the relevant billings which were involved with the barter transaction on April 22, 2008, and they are gathering additional billings and other materials associated with the Trustee's informal and new formal discovery requests. The Trustee has requested attorney billings to non-Debtor parties and this may pose an issue which requires Court attention, as some or all of these billings are subject to the attorney client privilege of the non-Debtor and unless Defendants or the Trustee are successful in having the privilege waived, any disclose may be preclude or, at a minimum, subject to a protective order and most likely redacted.      Defendants plan to take the deposition of the Trustee and review the materials he has been subpoenaed to produce. This may lead to the need for further discovery.

**11.   Further Amendments**.

The parties do not at this time need to amend the pleadings.

**12.   Dispositive Motions**.

**TRUSTEE**:  At this time, the Trustee does not anticipate filing a dispositive motion. The Trustee does not want to foreclose this opportunity as something during discovery may provide a basis for a dispositive motion.  On November 10, 2011 the Trustee suggested to Defendants that they discuss the issues they would raise in a dispositive motion before drafting and filing one to determine whether the disputed issues can be resolved.  The

parties discussed the possibility of attempting resolution of this matter without the need for filing a dispositive motion.

**DEFENDANTS**:   Defendants anticipate filing a dispositive motion to dismiss the preference claims.

13.   **Contested Legal Issues**.

Based on the Parties' filings to date, it appears that there will be the following contested legal issues:

(1)   Whether the transfers were made contemporaneously and within the ordinary course of business or were the transfers made on account of an antecedent debt?

(3)   Whether the transfer was made with actual intent to hinder, delay or defraud any entity to which Debtor was or became indebted?

(4)   Was Debtor insolvent at the time of the transfers?

(5)   Are Defendants or either of them insiders within the meaning of the Bankruptcy Code?

(6)   What, if any, effect does the reaffirmation of the debt on the Malibu boat have on the § 547 and § 548 claims?

(7)   Does the Debtor act at his own peril when he continues to pay on a secured debt for an asset transferred to his attorney, when the asset is recovered by the estate?

(8)   Whether the Defendants received the assets in good faith?

(9)   Whether the Trustee is barred by waiver, estoppel or laches from pursuing a claim involving the Malibu boat?

8

14.    **Contested Factual Issues**.

(1)    Were the transfers made by Debtor with the intent to hinder, delay or defraud his creditors?

(2)    Were the transfers made to Defendants on account of antecedent debt?

(3)    Did Debtor retain possession, title or control over the assets transferred?

(4)    Did Defendants exercise dominion and control over Debtor when he made the transfers?

(5)    Are Defendants insiders as that term is defined in the Bankruptcy Code?

(6)    Did Defendant Charron & Hanisch, PLC furnish reasonably equivalent value in the form of legal services for the goods it received?

(7)    Whether the transfers were made within the relevant period for recovery of § 547 and § 548 claims.?

15.    **Non-Expert Witnesses**.

The Trustee anticipates the following witnesses will testify:

Debtor Robert Judd Schnoor
170 Marcell
Rockford, MI

George Larimore
300 Ottawa NW; Ste. 400
Grand Rapids, MI
(616) 988-5817

David Charron
4949 Plainfield NE
Grand Rapids, MI 49525
616 363-0300

Persons who may be called by the Trustee to testify:

Joshua Schnoor, son of debtor
7745 Greenbrier Drive
Rockford, MI 49341

Guy Hiestand
275 Sorrento Dr. SE
Byron Center, MI 49315-9315
616 455-5028
        Or
        Guy L. Hiestand, CPA
        4305 Division Ave. S
        Grand Rapids, MI 49548-3315
        (616) 534-0094

Stacey George
Charron & Hanisch PLC
4949 Plainfield Ave. NE
Grand Rapids, MI 49525
616 363-0300

Dave Young
Fortress Partners
5500 Northland Dr. NE
Grand Rapids, MI
616 447-2293

Dave Trzybinski
2598 Knightsbridge Rd. SE Apt.77
Grand Rapids, MI 49546
Employed at Hiestand & Company

Defendant Robert E.W. Schnoor; Represented by attorney Chris Breay
6062 Parview Drive SE
Grand Rapids, MI 49546

Eugene Debbaudt
Debbaudt Investigations

Debtor's children
        Laura Schnoor – North Carolina

Jane Katherine (Katy) Schnoor
  Licensed Commercial Insurance Account Manager
  Willis
  3196 Kraft Ave. SE
  Grand Rapids, MI
  616 957-2020
Suzanna Velting
Joshua Schnoor

Tyler Velting
8390 Cannonsburg Road NE
Ada, MI 49301-9729
616 874-6044

Nancy Carlson
Employed at Great Lakes Risk Management
  170 Marcell
  Rockford, MI
  616 866-4488
Resides at:
  5235 Vista Royale Ct. NE
  Rockford, MI 49341-8808
  616 866-3504

Kathleen Langan Rosengren
7295 Cascade Road SE
Grand Rapids, MI 48546-7308
616 957-7308

Since many of these potential witnesses have not been contacted, the Trustee needs time to

interview or depose the above listed people in order to complete discovery and determine

who is important to this adversary.  The Trustee may call any of the other listed witnesses

on the disclosures filed with the Court by Defendants or persons identified during

discovery that are currently unknown.

The Trustee anticipates the trial will take 1-2 days to present.

**DEFENDANTS**:  Defendants will call the following witnesses at trial:

David Charron

Robert Judd Schnoor

**16.   Expert Witnesses.**

**TRUSTEE**:  The Trustee requested Meidema Auction to value the property and on the basis of their valuation, the parties have stipulated to the following asset valuations as of November 7, 2011 for purposes this action:   (1) 2004 Bennington pontoon boat, $8,000; (2) 2006 Malibu boat, $20,500; and (3) boat hoist, $2,250.

**DEFENDANTS**:   As a result of the stipulation of asset values, no expert witness is anticipated.

**17.   Expected Length of Trial.**

The parties believes that the length of trial will be approximately 1-2 days.

**18.   Rule 7026(f) Meeting.**

The Rule 7026(f) telephonic meeting took place September 27, 2011, the parties have exchanged no documents and have discussed settlement in good faith.  The parties have been in regular contact, however, at this time it appears a settlement cannot be reached.  Settlement was again discussed on November 10, 2011 and the parties are hopeful a resolution can be reached.

**19.   Current Status of Settlement Discussions.**

There have been numerous discussions about settlement, but there is no resolution. The parties will continue to discuss settlement given that the parties anticipate stipulating to the value of the assets transferred as determined by Miedema auctions.

20.     **Other Information**.

**TRUSTEE'S COUNSEL**:  For personal family reasons, the undersigned requests that the trial be scheduled no earlier than March 15, 2012.  This matter was discussed with Defendants and there is no objection.

**DEFENDANTS**:   A trial date after March 15, 2012 is acceptable.

                              Respectfully submitted,

                              Purkey & Associates PLC
                              Attorneys for Trustee Jeff Moyer

Dated:  November 11, 2011          */s/Edith A. Landman*
                              Edith A. Landman (P29409)
                              2251 East Paris Ave. SE; Ste. B
                              Grand Rapids, MI 49546
                              616.940.0553
                              landman@purkeyandassociates.com


Dated:  November 11, 2011           */s/David Charron*
                              David Charron (P39455)
                              Charron & Hanisch, PLC
                              4949 Plainfield NE
                              Grand Rapids, MI 49525
                              616 363-0300